UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-22390-CIV-MARTINEZ/SANCHEZ

OMEGA SA,

      Plaintiff,

v.

THE INDIVIDUAL, BUSINESS ENTITY, OR
UNINCORPORATED ASSOCIATION d/b/a
CHRONO24S.COM, CHRONO24US.SHOP, AEETBZ.TOP,
AUPZF.SHOP, BBEIP.SHOP, BHACIH.TOP, CIXPK.SHOP,
CLVEY.SHOP, CMIYHD.SHOP, ENIPUZ.SHOP,
EUHAA.SHOP, FDOQO.SHOP, FJNUY.TOP, FOLRX.SHOP,
FTETF.TOP, GFDSHOP.SHOP, GKKRP.SHOP,
GMHZG.SHOP, HRFPC.SHOP, HRQUD.SHOP,
HXNKQN.SHOP, IBGVLZK.COM, IBWRG.SHOP,
IURKC.SHOP, JHKCN.SHOP, LTEMU.COM, MEVZO.SHOP,
MKUVK.SHOP, MTNASR.SHOP, NXGFI.TOP,
OIBKO.SHOP, PNTQB.SHOP, PQLUT.SHOP, PSVRP.SHOP,
QGKRB.SHOP, RMWATCHS.LIFE, SDOIO.SHOP,
SRWZG.SHOP, TOLLN.TOP, UJGHM.SHOP, ULEGY.SHOP,
UMMXL.SHOP, UNITEDLUXURYAS.TOP, UVTLL.SHOP,
WCTGER.SHOP, WRISTHOBBYIST.COM, WTCHB.SHOP,
WWPIFCY.SHOP, WYGSQ.SHOP, XIVAN.SHOP,
XSAIS.SHOP, YGWXT.SHOP, YKBEU.SHOP,
ZQIWH.SHOP, AAUDA.TOP, AWCTNP.TOP, BCWZSF.TOP,
BDYNTN.TOP, BYSYJR.TOP, BZJEBM.TOP,
CHICSWAVE.COM, CHTMKY.TOP, EQLEP.SHOP,
EUGGCB.SHOP, FEFYDN.TOP, FJLNX.SHOP,
FMPEAS.TOP, FPEUFA.SHOP, FSZZCA.TOP, GCYDC.TOP,
GFPFT.SHOP, GRSFT.SHOP, HAXYYR.TOP,
HHFDW.SHOP, JIYXIK.TOP, JWNPZ.TOP, JYDYCO.SHOP,
MNIDNK.TOP, MWTRHM.TOP, NFDXPI.TOP, NLCOC.TOP,
NPWNBY.TOP, NZXYGC.SHOP, PKKHS.TOP,
PPWKNF.TOP, RGSEO.SHOP, RQSZOV.SHOP, SMYEI.TOP,
SQNHU.TOP, SUCCESSFULLYY.SHOP, TIKZY.SHOP,
TPWIV.TOP, TRENDNESTSHUB.COM, UNAEJW.SHOP,
UYLIJ.SHOP, VHQNZF.SHOP, VPOPDA.SHOP,
WCQRSV.SHOP, YFKBVA.SHOP, ZIZNR.TOP, and
ZZIIFH.TOP,

      Defendant.

_____/

### REPORT AND RECOMMENDATION ON PLAINTIFF'S
### MOTION FOR ENTRY OF PRELIMINARY INJUNCTION

This matter is before the Court on Plaintiff Omega SA's Motion for Entry of a Preliminary Injunction. ECF No. 24.[1]  The Plaintiff has moved for entry of a preliminary injunction against the Defendant[2] based on alleged violations of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), and claims of common law unfair competition and common law trademark infringement.

The Court held a hearing on July 3, 2025, at which only counsel for the Plaintiff was present and available to provide evidence supporting the Plaintiff's motion.  The Defendant has not responded to the Plaintiff's motion, has not made any filings in this case, and has not appeared in this matter, either individually or through counsel.  Having reviewed the Plaintiff's motion, its accompanying attachments, the record, and the relevant legal authority, and the undersigned being otherwise fully advised in the premises, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's motion be **GRANTED**.

## I.      BACKGROUND

Plaintiff is the owner of all rights in and to the federally registered trademarks identified in Paragraph 4 (the "Omega Marks") of the Declaration of Antoine Haller.  *See* ECF No. 8-1 at ¶ 4; *see also* ECF No. 1-2; ECF No. 23-1.  The Omega Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified in the trademark registrations.  *See* ECF No. 8-1 at ¶ 4.

---

[1] The Honorable Jose E. Martinez referred all matters relating to the Plaintiff's motion for entry of preliminary injunction to the undersigned.  ECF No. 25.

[2] The Defendant is the Individual, Business Entity, or Unincorporated Association doing business as the e-commerce store names listed in the caption of Plaintiff's amended complaint, ECF No. 23, and further identified in Schedule "A" to the amended complaint.  *See id.* at 22-29.  Schedule "A" can also be found on the public docket at ECF No. 12-1.

Defendant, through its various Internet websites operating under the seller names identified on Schedule "A" to Plaintiff's motion, has advertised, promoted, offered for sale, or sold goods bearing and/or using what Plaintiff has determined to be counterfeits, infringements on, and exact copies of one or more of the Omega Marks without authority.  *See* ECF No. 8-1 at ¶¶ 14-18; *see also* ECF No. 8-2 at ¶ 2 (Declaration of Virgilio Gigante); ECF No. 8-4 at ¶¶ 4-6 (Declaration of Kathleen Burns); ECF Nos. 8-5, 8-6, 8-7 (website captures of infringing activity, Parts 1-3).

The Plaintiff has submitted sufficient evidence showing Defendant has infringed the Omega Marks.  *See* ECF No. 8-4 at ¶¶ 4-6; ECF No. 8-1 at ¶¶ 4, 17-18; ECF No. 8-3 (Comparison Chart); ECF Nos. 8-5, 8-6, 8-7.  Defendant is not now, nor has it ever been, authorized or licensed to use the Omega Marks.  *See* ECF No. 8-1 at ¶¶ 14, 17.

The Plaintiff retained Invisible Inc, a licensed private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Plaintiff's branded products by Defendant and to document the available payment account data for receipt of funds paid to Defendant for the sale of such counterfeit branded products.  *See* ECF No. 8-1 at ¶ 15; ECF No. 8-2 at ¶ 2; *see also* ECF No. 8-4 at ¶ 3.  Invisible Inc accessed the e-commerce stores operating under Defendant's seller names identified on Schedule "A" to Plaintiff's motion (the "Selling E-commerce Store Names") and placed orders for the purchase of watches bearing and/or using counterfeits of one or more of Plaintiff's trademarks at issue in this action.  *See* ECF No. 8-4 at ¶ 4; *see also* ECF Nos. 8-5, 8-6, 8-7.  Each order was processed entirely online, and upon proceeding to checkout via PayPal, Invisible Inc was automatically redirected to the PayPal checkout page to finalize payment.  *See* ECF No. 8-4 at ¶ 5.  Upon reviewing the PayPal merchant data, Invisible Inc discovered that Defendant was using one of the payment intermediary e-commerce store names identified on Schedule "A" to Plaintiff's motion (the "Intermediary E-commerce Store Names") to

complete the checkout process for the watches ordered via the Selling Ecommerce Store Names (the Selling E-commerce Store Names and Intermediary E-commerce Store Names are collectively referred to herein as the "E-commerce Store Names"). *See* ECF No. 8-4 at ¶ 5. Following the submission of the orders, Invisible Inc documented information for finalizing payments for the products ordered. *See* ECF No. 8-4 at ¶ 6; ECF Nos. 8-5, 8-6, 8-7. At the conclusion of the process, the detailed web pages of the various watches bearing the Omega Marks offered for sale and ordered via Defendant's E-commerce Store Names were sent to Plaintiff's representative for review. *See* ECF No. 8-4 at ¶ 6; ECF No. 8-2 at ¶ 2; ECF No. 8-1 at ¶ 16. Plaintiff reviewed the detailed web page captures reflecting Plaintiff's branded products identified and captured by Invisible Inc and determined that the products were non-genuine, unauthorized versions of Plaintiff's goods. *See* ECF No. 8-1 at ¶¶ 16-18; *see also* ECF Nos. 8-5, 8-6, 8-7.

On May 27, 2025, Plaintiff filed an initial complaint (ECF No. 1), and on June 17, 2025, Plaintiff filed an amended complaint (ECF No. 23) against Defendant for trademark counterfeiting and infringement, in violation of 15 U.S.C. § 1114 (Count I), false designation of origin, in violation of 15 U.S.C. § 1125(a) (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). *See* ECF Nos. 1, 23. On June 2, 2025, the Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets, ECF No. 8, and its *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3), ECF No. 9. On June 4, 2025, the Court entered a Sealed Order Granting Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets, ECF No. 14, and a Sealed Order Authorizing Alternate Service of Process, ECF No. 15. On June 18, 2025, the Plaintiff filed its Motion for Entry of Preliminary Injunction, ECF No. 24.

Pursuant to the June 4, 2025 Order, the Plaintiff served Defendant, by email and through Plaintiff's designated serving notice website, with a copy of the initial complaint, the Order Granting *Ex Parte* Application for Temporary Restraining Order, the amended complaint, motion for preliminary injunction, and other filings in this matter.  *See, e.g.*, ECF Nos. 19-20, 24, 27. The Plaintiff also served Defendant with a copy of the Court's Order Setting Preliminary Injunction Hearing and Briefing Schedule (ECF No. 26). *See* ECF Nos. 28-29.

## II.    LEGAL STANDARD

The Plaintiff seeks a preliminary injunction pursuant to Federal Rule of Civil Procedure 65.  To obtain a preliminary injunction, the Plaintiff must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

As outlined below, the Plaintiff has submitted sufficient evidentiary support to warrant enjoining Defendant from engaging in the alleged infringing activities.  *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Lin*, No. 10-61640-CIV-HUCK, 2010 WL 11550032 (S.D. Fla. Sept. 28, 2010) (granting preliminary injunction against defendants who failed to respond or appear in the case, after plaintiff presented sufficient evidence of infringing activity to support its application for preliminary injunction).

### III.     ANALYSIS

The declarations and exhibits submitted by the Plaintiff in support of its motion for preliminary injunction support the following conclusions of law:

A. The Plaintiff has a substantial likelihood of success on the merits of its claims. The Plaintiff has a strong probability of proving at trial that (1) consumers are likely to be confused by Defendant's advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, infringements on, and exact copies of the Omega Marks, and that (2) the products Defendant is selling and promoting for sale are unauthorized copies of Plaintiff's products that bear and/or use unauthorized copies of the Omega Marks.

B. Because of the infringement upon the Omega Marks, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's amended complaint, motion, and accompanying declarations and exhibits, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers if a preliminary injunction is not issued.

i. Defendant owns or controls commercial Internet-based e-commerce stores operating under its E-commerce Store Names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing versions of the Omega Marks in violation of Plaintiff's rights; and

ii. There is good cause to believe that more counterfeit and infringing products bearing and/or using the Omega Marks will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products;

and that Plaintiff may suffer loss of sales for its genuine products and damage to its reputation among consumers.

C.  The balance of potential harm to Defendant in restraining its trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as a manufacturer and distributor of high-quality products if such relief is not issued.

D.  The public interest favors issuance of a preliminary injunction to protect the Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

E.  Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendant's distribution and sales of goods bearing and/or using counterfeits and infringements of the Omega Marks.  *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'") (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.,* 299 F.2d 772, 777 (7th Cir. 1962)).

F.  Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."  *Levi Strauss & Co.,* 51 F.3d at 987 (11th Cir. 1995) (citing *FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.  Considering the inherently deceptive nature of the counterfeiting business, the likelihood that Defendant has violated federal trademark laws, and Defendant's use of

intermediary e-commerce store names in sales transactions, there is good reason to believe Defendant will hide or transfer its ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

### IV.    CONCLUSION

For the foregoing reasons, the undersigned **RESPECTFULLY RECOMMENDS** that the Plaintiff's Motion for Entry of Preliminary Injunction, ECF No. 24, be **GRANTED.** The undersigned further recommends that the preliminary injunction provide as follows:

(1)     Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order are hereby restrained and enjoined until further Order of this Court from the following:

    a. From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing and/or using the Omega Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b. From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by the Plaintiff, bearing and/or using the Omega Marks, or any confusingly similar trademarks; (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing and/or using the Omega Marks, or any confusingly similar trademarks; or (iii) any assets or other financial accounts subject to this Order, including inventory assets, in the actual or constructive possession of, or owned, controlled, or held by, or subject to access

by, Defendant, including, but not limited to, any assets held by or on behalf of Defendant.

(2)     Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Order shall immediately discontinue, until further Order of this Court, the use of the Omega Marks or any confusingly similar trademarks, on or in connection with all e-commerce stores owned, operated, or controlled by Defendant, including the Internet based e-commerce stores operating under the E-commerce Store Names.

(3)     Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with Defendant having notice of this Preliminary Injunction shall immediately discontinue, until further Order of this Court, the use of the Omega Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), from any advertising links to other websites, from search engines' databases or cache memory, and from any other form of use of such terms that are visible to a computer user or serves to direct computer searches to e-commerce stores registered, owned, or operated by Defendant, including the Internet based e-commerce stores operating under the E-commerce Store Names.

(4)     Defendant shall not transfer ownership of the Internet based e-commerce stores under its E-commerce Store Names during the pendency of this action, or until further Order of the Court.

(5)     Defendant shall continue to preserve copies of all computer files relating to the use of any of the E-commerce Store Names and shall take all steps necessary to retrieve computer files

relating to the use of the E-commerce Store Names that may have been deleted before the entry of this Preliminary Injunction.

(6)     Upon Plaintiff's request, the privacy protection service for any of the E-commerce Store Names for which the registrant uses such privacy protection service to conceal the registrant's identity and contact information is ordered to disclose to Plaintiff the true identities and contact information of those registrants.

(7)     The domain name registrars for the E-commerce Store Names shall immediately, to the extent not already done, assist in changing the registrar of record for the E-commerce Store Names to a holding account with a registrar of Plaintiff's choosing (the "New Registrar"), excepting any such domain names which such registrars have been notified in writing by Plaintiff have been or will be dismissed from this action, or as to which Plaintiff has withdrawn its request to immediately transfer such domain names.  To the extent the registrars do not assist in changing the registrars of record for the domains under their respective control within one business day of receipt of this Order, the top-level domain (TLD) registries for the E-commerce Store Names or their administrators, including backend registry operators or administrators, within five business days of receipt of this Order, shall change, or assist in changing, the registrar of record for the E-commerce Store Names to a holding account with the New Registrar, excepting any such domain names which such registries have been notified in writing by Plaintiff have been or will be dismissed from this action or as to which Plaintiff has withdrawn its request to immediately transfer such domain names.  Upon the change of the registrar of record for the E-commerce Store Names, the New Registrar will maintain access to the E-commerce Store Names in trust for the Court during the pendency of this action.  Additionally, the New Registrar shall immediately institute a temporary 302 domain name redirection which will automatically redirect any visitor to

the E-commerce Store Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/Qa1j0d/index.html, whereon copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. Alternatively, the New Registrar may update the Domain Name System ("DNS") data it maintains for the E-commerce Store Names, which link the domain names to the IP addresses where their associated websites are hosted, to 45.63.17.51, which will cause the domain names to resolve to the website where copies of the Complaint, this Order, and all other documents on file in this action shall be displayed. After the New Registrar has effected this change, the E-commerce Store Names shall be placed on lock status by the New Registrar, preventing the modification or deletion of the domains by the New Registrar or Defendant.

(8)     After transfer as described in Paragraph 7, *supra*, Plaintiff may upload new files to the Intermediary E-commerce Store Names for the purpose of preventing further redirections and identifying all the e-commerce stores used by Defendant in connection with the sale of counterfeit and infringing Omega-branded goods that reroute to the payment Intermediary E-commerce Store Names.

(9)     Upon receipt of this Preliminary Injunction, the Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, Inc. ("PayPal"), and their related companies and affiliates shall immediately, to the extent not already done, (i) identify all financial accounts and/or sub-accounts, associated with the Internet based e-commerce stores operating under the E-commerce Store Names, merchant identification numbers, financial accounts, merchant names, WhatsApp telephone numbers, and/or the e-mail addresses identified on Schedule "A" to Plaintiff's motion, as well as any other related accounts of the same customer(s); (ii) identify all

other accounts which transfer funds into the same financial institution account(s) or any of the other financial accounts subject to this Preliminary Injunction; (iii) restrain the transfer of all funds, as opposed to ongoing account activity, held or received for their benefit or to be transferred into their respective financial accounts, and any other financial accounts tied thereto; and (iv) divert those restrained funds to a holding account for the trust of the Court;

(10)    Upon receipt of this Preliminary Injunction, the Defendant and all financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates, shall further, to the extent not already done, provide Plaintiff's counsel with all data that details (i) an accounting of the total funds restrained and identify the financial account(s) and sub-account(s) which the restrained funds are related to, and (ii) the account transactions related to all funds transmitted into the financial account(s) and sub-account(s) which have been restrained.  No funds restrained by this Preliminary Injunction shall be transferred or surrendered by any financial institution, payment processor, bank, escrow service, money transmitter, or marketplace website, including but not limited to, PayPal, and their related companies and affiliates for any purpose (other than pursuant to a purchase refund chargeback made by a consumer) without the express authorization of this Court.

(11)    Defendant or any financial institution account holder subject to this Preliminary Injunction may petition the Court to modify the asset restraint set out in this Order.

(12)    This Preliminary Injunction shall apply to the E-commerce Store Names, associated e-commerce stores and financial accounts, and any other e-commerce store names, seller identification names, or financial accounts that are being used by Defendant for the purpose of counterfeiting the Omega Marks and/or unfairly competing with Plaintiff.

(13)     This Preliminary Injunction shall no longer apply to any Defendant or associated e-commerce store name dismissed from this action or as to which Plaintiff has withdrawn its request for a preliminary injunction.

(14)     This Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date set by the Court or stipulated to by the parties.

(15)     Pursuant to 15 U.S.C. § 1116(d)(5)(D) and Federal Rule of Civil Procedure 65(c), Plaintiff shall maintain its previously-posted bond in the amount of Ten Thousand Dollars and Zero Cents ($10,000.00), as payment of damages to which Defendant may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further order of the Court.  In the Court's discretion, the bond may be subject to increase should an application be made in the interest of justice.

(16)     In addition, for the purpose of providing additional notice of this proceeding and all other pleadings, orders, and documents filed herein, the owners, operators and/or administrators of the e-commerce stores, and/or financial institutions, payment processors, banks, escrow services, and money transmitters, and marketplace platforms, including but not limited to, PayPal, and their related companies and affiliates shall, at Plaintiff's request, provide Plaintiff's counsel with any e-mail addresses known to be associated with Defendant's E-commerce Store Names.

_____

Pursuant to Local Magistrate Rule 4(b), the Court finds good cause to EXPEDITE the period to serve and file written objections to this Report and Recommendation, if any, with the Honorable Jose E. Martinez, United States District Judge.  The parties shall accordingly have **until July 14, 2025** to file and serve any written objections to this Report and Recommendation.  Failure to file timely objections will bar a *de novo* determination by the District Judge of any issue

addressed in the Report and Recommendation, will constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions," and will only allow appellate review of the district court order "for plain error if necessary in the interests of justice." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

   **RESPECTFULLY RECOMMENDED** in Chambers in Miami, Florida, on this 7th day of July, 2025.

            _____

            EDUARDO I. SANCHEZ
            UNITED STATES MAGISTRATE JUDGE

cc:  Hon. Jose E. Martinez
   Counsel of Record